UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SKULL VALLEY HEALTH CARE, LLC, a tribal entity, and SKULL VALLEY HEALTH CLINIC LLC, a tribal entity d/b/a Warrior Sprit Recovery Center,<br><br>        Plaintiffs,<br><br>v.<br><br>NORSTAR CONSULTANTS LLC, a Utah Company, ASHANTI MORITZ, an individual, and DOES I–V,<br><br>        Defendants. | **ORDER AND MEMORANDUM DECISION ON MOTION TO DISMISS COUNTERCLAIMS AND CROSSCLAIMS (ECF NO. 11)**<br><br><br><br>Case No. 2:22-cv-00326<br><br>District Judge Tena Campbell |
| ASHANTI MORITZ, an individual,<br><br>        Counterclaim/Crossclaim Plaintiff,<br><br>v.<br><br>SKULL VALLEY HEALTH CARE, LLC, a tribal entity, CANDACE BEAR, an individual, DWAYNE WASH, an individual, and VICTOR GARCIA, an individual,<br><br>        Counterclaim/Third-Party Crossclaim Defendants. | |

This is a dispute between an employer, Skull Valley Health Care and Skull Valley Health Clinic (together, SVHC[1]) and its former employee, Defendant and Counter- and Crossclaimant, Ashanti Moritz. Before the court is SVHC and Defendant Victor Garcia's motion to dismiss Ms. Moritz's counter- and crossclaims (together with Candace Bear and Dwayne Wash, SVHC and

---

[1] The parties largely treat these entities as interchangeable. (See Answer, ECF No. 5 ¶¶ 2, 17; Mot. Dismiss, ECF No. 11 at 2). For example, in her Answer and Counter- and Crossclaims, Ms. Moritz refers both to "Skull Valley Health Care" and "Skull Valley Health Clinic" as "SVHC." (Answer to Compl., Countercl., and Third-Party Crosscls. ("Answer"), ECF No. 5 at ¶¶ 2, 17). Except where noted below, for the purposes of this Order the court generally uses SVHC to collectively refer to both of the SVHC entities.

1

Mr. Garcia are the "Crossclaim Defendants") (Mot. Dismiss, ECF No. 11).  For the reasons set out below, the court grants the motion to dismiss in part, and denies it in part.

## I.   <u>Procedural Background.</u>

This action was originally filed in state court on March 28, 2022.  (Notice of Removal, ECF No. 2 at 3).  It was removed to this court on May 5, 2022, under 28 U.S.C. § 1331.  <u>Id.</u> at 2.  Currently at issue are Ms. Moritz's two counter- and crossclaims.  The first is a claim for wrongful termination against SVHC and all three Crossclaim Defendants.  (Answer, ECF No. 5 at ¶¶ 82–96).  The second is a claim for discrimination and hostile work environment.  <u>Id.</u> at ¶¶ 97–109.  Ms. Moritz stipulates that the second count (Count II) should be dismissed.  (Opp. Mot. Dismiss, ECF No. 15 at 11).  Consequently, the court focuses on whether Ms. Moritz's wrongful termination claim should also be dismissed.

SVHC and Mr. Garcia (together, "Movants") have moved to dismiss Ms. Moritz's counter- and crossclaim under Federal Rule of Civil Procedure 12.  (Mot. Dismiss, ECF No. 11 (moving to dismiss under Fed. R. Civ. P. 12(b)(1), (6), and (7)).  Ms. Moritz did not timely respond to the motion.  Following the court's order to show cause about why the motion to dismiss should not be granted, Ms. Moritz responded in opposition to dismissal.  (Opp. Mot. Dismiss, ECF No. 15).  No reply was filed by Movants in support of dismissal.

## II.   <u>Factual Background.</u>

The Plaintiffs in this action are two "sister corporations," Skull Valley Health Care, LLC and Skull Valley Health Clinic, LLC.  (Compl., ECF No. 2-4 ¶ 4).  Both were formed under Utah law initially, and then converted to tribal entities.  (Answer, ECF No. 5 ¶ 2; Bear Decl. ECF No. 11-1 ¶ 15).  After the conversion, the SVHC entities were "tribal entities under tribal law . . . registered as Tribal entities with the Utah Secretary of State."  (<u>See</u> Declaration of Chairwomen

Candace Bear in Support of Motion to Dismiss Counterclaims and Crossclaims Pursuant to FRCP 12(b)(1); 12(b)(6); 12(b)(7), ECF No. 11-1 ¶ 15 ("Bear Decl."))).

The purpose of SVHC, and the reason why it was formed, is to provide health care services in Toole County, Utah, pursuant to an Indian Self-Determination and Education Assistance Act (ISDEAA) contract.  See id. ¶¶ 14–15.  The ISDEAA contract is between the Skull Valley Band of Goshute Indians of Utah and the Department of Health and Human Services ("HHS") acting through the Indian Health Service ("IHS").  (See Exhibit 1 to Bear Decl. Redacted Indian Self-Determination Contract HHSI247202220003C Fiscal Year 2002 Annual Funding Agreement, ECF No. 11-2) ("AFA")).

The Skull Valley Band of Goshute Indians (the "Band") are one of the 574 federally recognized Indian tribes.  (Bear Decl., ECF No. 11-1 ¶ 4).  They are a self-governing people, with a democratic form of governance.  Id. ¶ 5. The democratically-elected Chairwoman is Candace Bear.  Id. ¶¶ 3, 6.  She, along with the Band's Vice-Chairman (Dwayne Wash) and the Band's Secretary are the three officials who represent the Band as the Executive Committee.  Id. ¶¶ 7, 20.

While SVHC was formed to provide healthcare in connection with the ISDEAA contract, "The Skull Valley Band of Goshute Indians are the sole, exclusive, and rightful owners of [SVHC]."  Id. ¶ 16.  The Executive Committee of the Band are SVHC's managers, and "No other person or entity may manage the affairs of the [Band's] Tribal owned entities."  Id. ¶ 17. "The Executive Committee are compensated for their time working as elected representatives including all the time that is contributed to the management of [SVHC] but are not compensated for two separate positions.  The Executive Committee is only compensated for its work as the governing body of the [Band]."  Id. ¶ 23.  Further, any SVHC profits "are the Band's property to

administer pursuant to the terms of the ISDEAA Contract and federal law," and the Band supports the clinic with financial backing when needed.  Id. ¶ 25.  Reflecting this, both SVHC entities were established with the intention that Tribal immunity would extend to the entities as if the entities were the tribe itself consistent with 25 CFR [§] 900.4."  Id. ¶ 19.

This action is about two main topics: a Facebook page, and a wrongful termination.  The Complaint focuses on the ownership and control of the Warrior Spirit Facebook page, which SVHC argues is its intellectual property.  (Compl., ECF No. 2-4 ¶ 36).  SVHC alleges that Ms. Moritz, SVHC's former employee, was responsible for managing the Facebook page—on behalf of SVHC—while she was an employee on behalf of SVHC.  Id. ¶¶ 30–32.  The crux of SVHC's Complaint is that when Ms. Moritz left SVHC after she was fired, she illegally took the Warrior Spirit Facebook page, and changed the information on it to her own business' information.  See id. ¶¶ 45–146.  SVHC seeks nonmonetary relief and damages.  Id. ¶ 14.  The damages it seeks "are more than $50,000 but less than $300,000."  Id.  The nonmonetary relief it seeks is injunctive relief requiring the "Warrior Spirit Facebook Page" to be left alone by Ms. Moritz and her company, returned to the state it was in on January 22, 2022, disabled, and turned over to SVHC.  Id. at ¶ A (of Prayer for Relief).

Ms. Moritz disputes these allegations, and counterclaims against Skull Valley Health Care, LLC and three third-party individual defendants.  Her crossclaims do not focus on the Facebook page.  They focus on her time at, and her termination from, SVHC.  Id. ¶¶ 25, 33 (noting her work at both SVHC entities).  Specifically, Ms. Moritz's wrongful termination claim is based on events that occurred during her time working for SVHC; she worked as a SVHC employee from August 1, 2019, until January 25, 2022.  (Answer, ECF No. 5 ¶ 83).  In addition to counterclaiming against Skull Valley Health Care, LLC, Ms. Moritz cross-claims against three

4

individual third parties: Chairwoman Bear, Mr. Wash, and Mr. Garcia.  The first two individuals are Executive Committee members while Mr. Garcia was, when Ms. Moritz was fired from SVHC, employed as a Clinic Administrator of Skull Valley Health Care, LLC.  (Bear Decl., ECF No. 11-1 ¶ 30).  He was also Ms. Moritz's supervisor.  Id.

The crux of Ms. Moritz's allegations is that she was discriminated against while working at SVHC and ultimately wrongfully terminated in retaliation for reporting improper, and potentially illegal, billing practices.  She alleges that she reported the billing practices to her supervisor, Mr. Garcia, but instead of addressing the issue, he punished her and retaliated against her for reporting the problem, ultimately leading to her wrongful dismissal.  (Answer, ECF No. 5 ¶¶ 42, 44–45, 50–55, 57, 70, 78, 81).  She further alleges that after she reported the improper billing practices, Chairwoman Bear and Mr. Wash also retaliated against her.  Id. ¶¶ 52, 57–59, 61–63, 74–75.  She alleges that her termination from SVHC was in violation of several clear and substantial public policies.  Id. ¶¶ 85–93.  Ms. Moritz also alleges that she was discriminated against on the basis of her tribal affiliation, gender, and status as a person in recovery.  Id. ¶ 98.  For her claims Ms. Moritz seeks only damages, she does not seek injunctive relief.  Id. ¶¶ 1–5 (of Prayer for Relief)).  For the wrongful termination claim, she seeks no less than $100,000 for her injury, and no less than $500,000 in punitive or exemplary damages.  Id. ¶¶ 95–96 (of Counter- and Crosscls.).

## III.    SVHC's Sovereign Immunity.

Movants argue that, among several other reasons that Ms. Moritz's claim should be dismissed, it should be dismissed because SVHC is entitled to the Band's tribal sovereign immunity.  Because tribal immunity is a jurisdictional issue, Bonnet v. Harvest (U.S.) Holdings, Inc., 741 F.3d 1155, 1158 (10th Cir. 2014), the court begins its analysis by examining the

immunity question.  Based on the below analyses, the court finds that SVHC is entitled to tribal sovereign immunity, and that it does not have jurisdiction over Ms. Moritz's wrongful termination claim, as this claim is brought against SVHC.

a.  In Deciding the Question of Sovereign Immunity, the Court Can Consider Extra-Pleading Evidence.

Relevant to the issue of tribal sovereign immunity are two documents that are not in the pleadings but that Movants submitted with their Motion to Dismiss.  The first is Chairwoman Bear's Declaration.  (Bear Decl., ECF No. 11-1).  The second is a redacted copy of the Fiscal Year 2022 Annual Funding Agreement between the Skull Valley Band of Goshute Indians and the United States.  (See AFA, ECF No. 11-2).

The court can, and will, consider this extra pleading evidence in assessing the sovereign immunity issue.  Movants largely frame the tribal sovereign immunity issue as arising under Rule 12(b)(7); courts considering motions to dismiss brought under this rule can consider extra-complaint evidence.  See Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994).  Courts considering motions to dismiss brought under Rule 12(b)(1), which is the rule under which many courts consider the tribal immunity issue, can also consider extra-complaint evidence.  See Somerlott v. Cherokee Nation Distributors, Inc., 686 F.3d 1144, 1152 (10th Cir. 2012) ("When considering a motion to dismiss under Rule 12(b)(1) the court may consider evidence extraneous to the complaint itself without converting the motion to a Rule 56 motion for summary judgment.").

b.  SVHC Is Entitled to the Band's Tribal Immunity as an "Arm of the Tribe."

"It is well-established that 'Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government.  Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of

regulating their internal and social relations.'" Id. at 1148 (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978) (cleaned up in Somerlott). "As sovereign powers, Indian tribes are immune from suit absent congressional abrogation or clear waiver by the tribe." Id. (citing Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 757–58 (1998)). "[A]lthough the Supreme Court created the doctrine of tribal immunity, the Court has acknowledged 'there are reasons to doubt the wisdom of perpetuating the doctrine,' and that it is 'founded upon an anachronistic fiction.'" Bonnet, 741 F.3d at 1160 (quoting Kiowa, 523 U.S. at 758) (cleaned up). "The Court has 'retained the doctrine, however, on the theory that Congress ha[s] failed to abrogate it in order to promote economic development and tribal self-sufficiency.'" Id. (quoting Kiowa, 523 U.S. at 757).

"Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities." Somerlott, 686 F.3d at 1148 (quoting Native Am. Distrib. v. Seneca–Cayuga Tobacco Co., 546 F.3d 1288, 1292 (10th Cir. 2008)). "The applicability of tribal sovereign immunity does not depend on whether the activities giving rise to the litigation occurred on or off tribal land." Id. (citing Kiowa, 523 U.S. at 754). Consequently, Ms. Moritz's allegation that "SVHC operates from facilities located within the county of Tooele Utah but not on the Goshute Tribe reservation" is not important to the jurisdictional analysis. (Opp. Mot. Dismiss, ECF No. 15 at 1 ¶ 4). Immunity also does not "depend on whether the tribe is directly responsible for the financial liabilities of its sub-entities." Somerlott, 686 F.3d at 1148 (citing Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1181 (10th Cir. 2010) [hereinafter "BMG"]).

Movants argue that SVHC it is entitled to the Band's tribal sovereign immunity as a "subordinate economic entity" and as an "arm of the tribe." (Mot. Dismiss, ECF No. 11 at 12).

Ms. Moritz contends that SVHC is not an arm of the tribe, that the Band's immunity does not apply to SVHC, and further, even if SVHC is as an arm of the tribe, SVHC has "effectively" waived sovereign immunity.  Here, Movants are correct.  SVHC is entitled to the Band's immunity.

i.  When Ms. Moritz was Terminated from SVHC, SVHC was Organized Under Tribal Law.

A threshold issue in analyzing sovereign immunity for an economic entity is whether the entity (here, SVHC) is organized under the laws of the tribe or of another sovereign (here, the state of Utah).  As the Tenth Circuit observed in Somerlott, "a separate legal entity organized under the laws of another sovereign, [which would be Utah in this action], cannot share in the [Band]'s immunity from suit."  686 F.3d at 1150.  But the Tenth Circuit has also observed this rule's limits, stating that "This holding does not apply . . . [when the economic entity is] formed not only under state law but also under [tribal] law."  Jim v. Shiprock Associated Sch., Inc., 833 F. App'x 749, 751 (10th Cir. 2020) (unpublished).[2]

How the Somerlott rule might apply to an entity that once was organized under the laws of another sovereign but was reorganized under tribal law—as it is here—was not before the Tenth Circuit in Somerlott.  The court observed that the entity at issue in Somerlott,

> was formed as an Oklahoma corporation. At the time of [its] creation, the [Cherokee] Nation did not have laws permitting the formation of limited liability companies.  On April 29, 2004, [the entity] was converted to an Oklahoma limited liability company and renamed[. . . , and] became a wholly-owned subsidiary of [a tribal corporation itself wholly owned and regulated by the Cherokee Nation] on February 1, 2008, pursuant to the Nation's Jobs Growth Act of 2005.

Id. at 1146–47.  While the parent company in Somerlott may have been a tribal corporation, the Somerlott opinion does not indicate that the Oklahoma corporation (which was later converted to

---

[2] Unpublished decisions are cited for persuasive value.  Fed. R. App. 32.1; DUCivR 7-2(a)(2).

an Oklahoma limited liability company) at issue was ever reformed as an entity formed under tribal law or registered with Oklahoma as a tribal entity.  See id. at 1147 n. 2.

The court can find nothing in BMG that indicates that once an entity originally formed under state law is reorganized or reformed under tribal law it cannot then share in a tribe's immunity from suit.  This is the formation history of the entities presently before the court: SVHC.  The parties agree that the SVHC entities were formed under Utah law initially, and then converted to tribal entities.  (Answer, ECF No. 5 ¶ 2; Bear Decl. ECF No. 11-1 ¶ 15).  Movants clarify that after the conversion the SVHC entities were "tribal entities under tribal law . . . registered as Tribal entities with the Utah Secretary of State."  (Bear Decl. ECF No. 11-1 ¶ 15).

Based on the briefing, it is unclear when SVHC's transition from an entity formed under the laws of Utah to one formed, or also formed, under tribal law occurred.  In opposing the motion to dismiss, Ms. Moritz states that "The Goshute Tribe created Skull Valley Health Clinic, LLC . . . under Utah law as a Utah Limited Liability Company in August 2018.  It was converted to a Utah limited liability company in October 2019 and finally to a Utah Tribal Limited Liability Company in September 2021."  (Opp. Mot. Dismiss, ECF No. 15 at 1 ¶ 3).  But the counterclaim Defendant in this action is Skull Valley Health Care, LLC (the "Care entity"), not Skull Valley Health Clinic, LLC (the "Clinic entity").  (Answer, ECF No. 5 ¶ 2).  These entities are "sister corporations," not a single entity.  (Compl., ECF No. 2-4 ¶ 4).  Because the issue before the court is whether the economic entity being counterclaimed against is entitled to tribal sovereign immunity, it is the Care entity's formation that is at issue.  On the Care entity's formation, Ms. Moritz states that "Skull Valley Health Care, LLC . . . is a limited liability company originally organized under the laws of the State of Utah and later allegedly 'converted' to a tribal limited liability company . . . ."  (Answer, ECF No. 5 ¶ 2).  A timeline of the Care entity's formation, and

when it changed from a domestic limited liability company ("LLC") to a tribal LLC is not provided by either party.

However, the Division of Corporations and Commercial Code in the Utah Department of Commerce maintains a database of businesses registered with the State of Utah. See Business Search, UTAH DEP'T COM. DIV. CORP. AND COM. CODE, https://secure.utah.gov/bes/index.html (last visited July 29, 2023). The court takes judicial notice of these public records. See Utah Gospel Mission v. Salt Lake City Corp., 316 F. Supp. 2d 1201, 1206 n.5 (D. Utah 2004), aff'd, 425 F.3d 1249 (10th Cir. 2005) (quoting James Wm. Moore et al., Moore's Federal Practice ¶ 56.30[4] (3d ed. 1997). These records contain entity information for "Skull Valley Health Care, LLC." According to these records, the Care entity was registered as a Tribal LLC on July 31, 2018. Entity Information About Skull Valley Health Care, UTAH DEP'T COM. DIV. CORP. AND COM. CODE, https://secure.utah.gov/bes/index.html (type "Skull Valley" into search box; then open hyperlink of results). Its registration as a Tribal LLC was last renewed on May 5, 2021. Id. On October 18, 2022, its registration as a Tribal LLC expired. See id. To register as a Tribal LLC, an entity must file a "Foreign Registration Statement (Tribal Limited Liability Company)." See Form: Foreign Registration Statement, UTAH DEP'T COM. DIV. CORP. AND COM. CODE, https://corporations.utah.gov/wp-content/uploads/2021/09/tribal_lcapp.pdf (last accessed July 29, 2023). Among other information, the form requires the Tribal LLC to list the "Tribal Nation of Formation." Id. This requirement clarifies that Tribal LLCs registered in Utah are "formed" under a sovereign other than the state of Utah; they are formed under the laws of a particular Tribal Nation. (See also Bear Decl., ECF No. 11-1 ¶ 15 (describing SVHC entities as "tribal entities under tribal law.") (emphasis added)).

Ms. Moritz's wrongful termination claim is based on events that occurred during her time working for SVHC; she worked as a SVHC employee from August 1, 2019, until January 25, 2022.  (Answer, ECF No. 5 ¶ 83).  It is unclear which SVHC entity employed Ms. Moritz, or whether she worked for both of the SVHC entities; the Complaint describes Ms. "Moritz's employment with Skull Valley Health Clinic LLC," (Compl., ECF No. 2-4 ¶ 25), as well as her "terminat[ion] from employment with Skull Valley Health Care LLC," id. ¶ 33.  Either way, at the time of Ms. Moritz's injury (which was her wrongful termination), as well as during the entirety of her employment with SVHC, the Care entity was registered either as both a Utah LLC and a Tribal LLC, or just as a Tribal LLC.[3]  It had this same status on the date this action was initially filed in state court (March 28, 2022 (Compl., ECF No. 2-4)), the date this action was removed to federal court (May 13, 2022 (Notice of Removal, ECF No. 2)), and on the date that Ms. Moritz filed her Answer, which includes her counter- and crossclaims, with this court (May 13, 2022 (Answer, ECF No. 5)).  As the Care entity—which is the Counterclaim Defendant— was at all salient times formed under tribal law, Somerlott's holding that an economic entity does not share a tribe's sovereign immunity when the entity was formed under state law does not apply.[4]

_____

[3] It is unclear which of these is the case because the Utah public records indicate that "Skull Valley Health Care, LLC"—the Domestic LLC organized under the State of Utah's laws—does business as, among other things, Nat-Su Health Care.  As of the date this order was issued, Nat-Su Health Care's registration status appears as "current," unlike "Skull Valley Health Care, LLC"'s status, which is expired.  "Skull Valley Health Care, LLC" was also registered as a Domestic LLC on July 31, 2018, and on August 7, 2020, its registration as a Domestic LLC expired.  See Business Search, UTAH DEP'T COM. DIV. CORP. AND COM. CODE, https://secure.utah.gov/bes/index.html (last visited July 29, 2023).  Regardless, the Care entity was registered as a Tribal LLC at the above-noted times, even if it was also registered as a Utah LLC for part of this time, and even if the Care entity's DBA was also registered as a Utah LLC.

[4] The court also notes that even if the Clinic entity were a Counterclaim Defendant in this action, which it is not, the Somerlott rule would still not apply because the Clinic entity was organized under tribal law (as well as possibly under state law), when Ms. Moritz was fired from her

ii.   The BMG "Arm of the Tribe" Analysis.

Where an entity is formed under tribal law, the Tenth Circuit has observed that that the following factors are helpful in informing a court's inquiry to determine if the entity qualifies as a subordinate economic entity or "arm of the tribe" entitled to share in a tribe's immunity:

> (1) the method of creation of the economic entit[y]; (2) [its] purpose; (3) [its] structure, ownership, and management, including the amount of control the tribe has over the entit[y]; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entit[y].

BMG, 629 F.3d at 1187.  Also included in this list of factors is (6) "whether the purposes of tribal sovereign immunity are served by granting [the entity] immunity."  Id. at 1191. The court applies BMG's six-factor test to determine whether SVHC is entitled to share in the Band's immunity.  Doing so, it finds that SVHC is entitled to share in the band's immunity.

A.   The Method of Creation of SVHC.

This factor weighs slightly in favor of the conclusion that SVHC is entitled to tribal sovereign immunity.  Both parties agree the relevant SVHC entity was initially created as a Utah corporation and that SVHC was "converted" into a tribal LLC.  (Bear Decl., ECF No. 11-1 ¶ 15; Answer, ECF No. 5 ¶ 2).  As discussed above, registering as a tribal LLC represents that SVHC was "formed" under tribal law.  This is confirmed by Chairwoman Bear's statement that SVHC was an entity under tribal law.  (Bear Decl., ECF No. 11-1 ¶ 15).  This "lends support to the conclusion that [SVHC] was created by the [Band] acting in its governmental . . . capacity."  BMG, 629 F.3d at 1191 (10th Cir. 2010) (quoting Native Am. Distrib., 546 F.3d at 1294).  Chairwoman Bear's declaration also supports this conclusion, as it states that the SVHC entities

---

employment, when this action was filed, and when she brought her counterclaims.  See Jim, 833 F. App'x at 751; (Opp. Mot. Dismiss, ECF No. 15 at 1 ¶ 3).

"were established with the intention that Tribal immunity would extend to the entities as if the entities were the tribe itself consistent with 25 CFR 900.4."  (Bear Decl., ECF No. 11-1 ¶ 19).

The court does not have before it the tribal resolution creating the Care entity—or rather, reforming it, as it was originally formed under Utah law—as the Tenth Circuit did in BMG, 629 F.3d at 1191–92.  The Circuit found that the resolution's description of the economic entity at issue there, which described it as "a wholly owned enterprise of the Tribe [which] shall be deemed an authorized agency of the [Tribe]," emphasized that the entity at issue was a subordinate entity of the Tribe and not a separate corporation.  Id. at 1192.  Without similar information before it, this court cannot say that the first factor weighs as heavily toward immunity as this factor did in BMG.  Nevertheless, the method of creation of SVHC weighs at least slightly in favor of concluding that SVHC is entitled to tribal sovereign immunity.

### B.  SVHC's Purpose.

The second factor also weighs in favor of immunity because SVHC was created to enable the Band to engage in government functions.  See BMG, 629 F.3d at 1192 ("The second factor also weighs strongly in favor of immunity because the [economic entities] were created for the financial benefit of the Tribe and to enable it to engage in various governmental functions.").

The purpose of SVHC is to "provide services pursuant to the ISDEAA contract."  (See Bear Decl., ECF No. 11-1 ¶ 15).  The services provided under an ISDEAA contract are governmental in nature, as the ISDEAA "authorizes the Government and Indian tribes to enter into contracts in which the tribes promise to supply federally funded services, for example tribal health services, that a Government agency would otherwise provide."  Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631, 634 (2005); id. at 639 (quoting 25 U.S.C. § 450a(b)) ("The Act seeks greater tribal self-reliance brought about through more 'effective and meaningful

participation by the Indian people' in, and less 'Federal domination' of, 'programs for, and services to, Indians.'").

Ms. Moritz argues that SVHC's purpose does not weigh in favor of immunity because "SVHC provides medical related services, although its patients are predominantly NOT members of the Goshute Tribe." (Opp. Mot. Dismiss, ECF No. 15 at 3). But the Annual Finding Agreement to the ISDEAA provides that "SVBG will provide health care services to SVBG members and other IHS eligible beneficiaries . . . . SVBG may also provide medical services to ineligible persons." (AFA, ECF No. 11-2 § 3). While the Band may be providing services to persons not eligible to be IHS beneficiaries, these services are framed as secondary to the purpose of providing such services to Band members and IHS-eligible persons, which supports the purpose of tribal self-reliance. Either way, Ms. Moritz does not explain how the diversity of the patients served by SVHC undermines the governmental functions it provides.

Ms. Moritz also argues that the second factor does not weigh in favor of immunity because "although created by the Goshute Tribe, money from the operation of the clinic does not go to the general treasury of the Goshute Tribe." (Opp. Mot. Dismiss, ECF No. 15 at 3). Ms. Moritz does not cite any authorities to support a conclusion that money from an economic entity has to go to a tribe's "general treasury" for the second BMG factor to weigh towards immunity. BMG found that the second factor weighed toward immunity when the revenue from the casino at issue there was more widely dispersed; 50% of the casino's revenue went towards tribal government functions, 25% went to tribal economic development and a tribal trust fund, and 25% was distributed among each eligible member of the tribe as per capita payments. 629 F.3d at 1193. That said, instead of SVHC financially benefiting the Band, or being created to do so, the Band may have to pay for SVHC, or at least the Clinic entity. (Bear Decl., ECF No. 11-1 ¶

14

25 ("The Skull Valley Band of Goshute Indians . . . does support the clinic with financial backing when needed.").  Unlike the casino in <u>BMG</u>, the entity at issue here is directed towards providing health services.  That the SVHC entities were neither created for, nor function to support, the <u>financial</u> benefit of the Band is not as relevant as it was in <u>BMG</u>.  Fostering financial self-determination is not this entity's priority, rather because SVHC provides health services to the Band and neighboring community, it furthers tribal self-determination and self-governance.  <u>See</u> <u>Wilson v. Alaska Native Tribal Health Consortium</u>, 399 F. Supp. 3d 926, 934 (D. Alaska 2019) (applying similar multi-part "arm of the tribe" test and holding, in context of "purpose" factor, that purpose of tribal health care entity carrying out ISDEAA functions supports a finding that entity is an arm of the tribe entitled to tribe's sovereign immunity).

       C.   <u>The Structure, Ownership, and Management of SVHC,</u>
             <u>Including the Amount of Control the Tribe has Over SVHC.</u>

The third factor weighs strongly for a finding of immunity.  In considering this factor, the Tenth Circuit has examined the individuals in the entity's leadership.  For example, in <u>BMG</u>, the Tenth Circuit found that this factor weighed both for and against a finding of immunity because, although the members of one of the entities at issue's Board of Directors were members of the Tribe (and were also sitting members of the Tribal Council), that entity's Chief Financial Officer was not a tribal member.  629 F.3d at 1193.  About the other entity at issue in <u>BMG</u>, the Tenth Circuit observed that the General Manager and Chief Financial Officer were not tribal members and that entity had fifteen directors, twelve of whom were not tribal members.  <u>Id.</u>

Here, the Band has tighter control over SVHC than the Tribe did over the entities at issue in <u>BMG</u>.  "The Skull Valley Band of Goshute Indians are the sole, exclusive, and rightful owners of [SVHC]."  (Bear Decl., ECF No. 11-1 ¶ 16).  The Executive Committee of the Band are the managers of SVHC.  <u>Id.</u> ¶ 17.  "No other person or entity may manage the affairs of the [Band's]

Tribal owned entities." Id.  Because Band members, specifically the Executive Committee, are the only individuals who may manage SVHC's affairs, this factor weighs strongly towards finding that SVHC is entitled to the Band's tribal sovereign immunity.

### D.   The Tribe's Intent with Respect to the Sharing of its Sovereign Immunity.

Concerning the fourth factor, the information available to the court weighs slightly towards a finding of immunity.  Ms. Moritz asserts that "There is no document or statement on behalf of the Goshute Tribe demonstrating any intent to extend its sovereign state to include SVHC." (Opp. Mot. Dismiss, ECF No. 15 at 3).  She argues that the absence of such information, coupled with the Band's choice to register and create SVHC under the laws of Utah, indicates that the Band did not intend to share its immunity with SVHC.  Id. at 3–4.

Unlike in BMG, the court has not been provided with a tribal ordinance governing the entity at issue, which could serve to guide it in assessing this factor.  See 629 F.3d at 1193–94. But the court does have Chairwoman Bear's declaration.  Chairwoman Bear is not merely a Crossclaim Defendant in this action, she is the elected Chairwoman of the Skull Valley Band of Goshute Indians.  (Bear Decl., ECF No. 11-1 ¶ 3).  As such, she is one of the three elected officials that constitute the Band's tribal government, the "Executive Committee." Id. ¶ 7. Consequently, her statement reflects how at least one member of the Band's tribal government views SVHC's sovereignty and the Band's intent to extend its sovereignty to SVHC.  On this issue, Chairwoman Bear is clear: "Both Skull Valley Health Clinic LLC and Skull Valley Health Care, LLC were established with the intention that Tribal immunity would extend to the entities as if the entities were the tribe itself consistent with 25 CFR [§] 900.4." Id. ¶ 19.  She also states that the SVHC entities were formed so the Band could provide services under the ISDEAA contract. Id. ¶ 15.  The regulations governing ISDEAA contracts note that those regulations are

16

not to be construed as impairing tribal sovereign immunity.  See 25 C.F.R. § 900.4(a) (stating

that "Nothing in these regulations [governing ISDEAA Contracts] shall be construed as:

Affecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit

enjoyed by Indian tribes.").  The Bear Declaration and the fact that SVHC was created to provide

services pursuant to an ISDEAA contract support a finding that the fourth factor weighs, at least

slightly, towards a finding of immunity.

E.   The Financial Relationship Between the Tribe and SVHC.

About the financial relationship between the Band and SVHC, Ms. Moritz argues that

"while SVHC was created by the Goshute Tribe there is no direct financial relationship that

benefits the general treasury of the Goshute Tribe."  (Opp. Mot. Dismiss, ECF No. 15 at 4).

While any SVHC profits "are the Band's property to administer pursuant to the terms of the

ISDEAA Contract and federal law," (Bear Decl., ECF No. 11-1 ¶ 25), as discussed above, the

benefits of the financial relationship between the Band and SVHC possibly flow the other way,

benefiting SVHC rather than the tribe's finances, id.

But the court is not persuaded by Ms. Moritz's terse argument that this means the

financial relationship between the Band and SVHC weighs against a finding of immunity.  Such

a finding seems to require that an entity be for-profit or even profitable for the entity to be

entitled to tribal sovereign immunity.  Ms. Moritz does not cite legal authority to support such a

proposition.  The court is persuaded by the analysis of this issue in Wilson, where the U.S.

District Court for the District of Alaska considered the sovereign immunity of another ISDEAA

contract tribal health care organization.  399 F. Supp. at 936.  There, the court observed, "That

[the health care entity] is a non-profit organization, as opposed to a for-profit organization, does

not undermine its status as 'an arm of the tribe.'" Id.  This court agrees;  SVHC's financial

relationship with the Band does not weigh against a finding that it is an arm of the tribe.

> F.  Whether the Purposes of Tribal Sovereign Immunity are
>      Served by Granting SVHC Immunity.

Finally, the sixth factor weighs towards a finding that SVHC is an arm of the tribe.  In

BMG, the Tenth Circuit observed that "[c]ases which have not extended immunity to tribal

enterprises typically have involved enterprises formed 'solely for business purposes and without

any declared objective of promoting the [tribe's] general tribal or economic development.'"  629

F.3d at 1195 (quoting Trudgeon v. Fantasy Springs Casino, 71 Cal. App. 4th 632 (1999),

abrogated by People v. Miami Nation Enterprises, 2 Cal. 5th 222, 386 P.3d 357 (2016)).  It found

that extending immunity to the entities at issue there, including a casino, directly protected the

sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity.  Id.

(quoting Allen v. Gold Country Casino, 464 F.3d 1044, 1047 (9th Cir. 2006)).  Here, the Band's

treasury is not at issue, but SVHC was not formed solely for business purposes or without any

declared objective of promoting the Band's general tribal development.  This ISDEAA contract-

enabling entity promotes tribal development and tribal self-reliance, and these are also core

purposes of sovereign immunity.

> b.  Ms. Moritz's Arguments that Her Claim Can Still Go Forward Even If SVHC is
>      an Arm of the Tribe Entitled to the Band's Immunity.

Under the six-factor test from BMG, the court finds that SVHC is entitled to share in the

Band's immunity.  But the court's analysis of SVHC's immunity cannot end there, because Ms.

Moritz argues that even if SVHC is an arm of the tribe, "SVHC has effectively waived sovereign

immunity, at least on a limited basis in this case."  (Opp. Mot. Dismiss, ECF No. 15 at 4).  Ms.

Moritz makes three arguments about how SVHC is not entitled to immunity in this case, even if it is an arm of the tribe.  The court considers each in turn and finds all of them unavailing.

    i.  <u>SVHC's Liability Insurance.</u>

Ms. Moritz argues that under "the ISDEAA Contract, the Secretary for the United States [HHS] is required to obtain or provide liability insurance or equivalent coverage for tribal organizations and tribal contractors carrying out contracts under the Act."  (Opp. Mot. Dismiss, ECF No. 15 at 4 (citing 25 U.S.C. § 5321(c)).  "[A]ny policy of insurance obtained or provided by the Secretary must include a provision 'that the insurance carrier shall waive any right it may have to raise as a defense the sovereign immunity of an Indian tribe from suit[.]'"  <u>Id.</u> at 4–5 (quoting 25 U.S.C. § 5321(c)(3)(A)).  Ms. Moritz allows that "such waiver is limited to 'the coverage or limits of the policy of insurance.'"  <u>Id.</u> at 5.  But she asserts that "this waiver must apply to [her] claim in this case under the ISDEAA Contract even if the Court determines that the SVHC is an arm-of-the-tribe."  <u>Id.</u>

Beyond a reference to the statute, Ms. Moritz does not cite any authority in support of her argument that this insurance waives SVHC's entitlement to tribal immunity for the purposes of this action.  Nevertheless, courts have recognized that the ISDEAA "requires the government to obtain liability insurance for tribes carrying out self-determination contracts entered into under the ISDEAA," and that the tribe waives some sovereign immunity with respect to suits arising out of the tribe's performance of its contractual duties.  <u>See</u> <u>Walton v. Tesuque Pueblo</u>, 443 F.3d 1274, 1279–80 (10th Cir. 2006); <u>Williams v. Stokes</u>, No. 1:14-CV-00376, 2015 WL 13662571, at *2 (D.N.M. Apr. 22, 2015).  More problematic for the court's analysis is that Ms. Moritz does not include the insurance policy at issue as an exhibit to her opposition to the motion to dismiss, or to her counter- and crossclaims, and she does not plead facts alleging anything about the

insurance policies.[5]  This information is, similarly, not in the Complaint, (Compl., ECF No. 2-4), or in the portion of the FY 2022 ISDEAA Annual Funding Agreement between the Band and the HHS IHS included as an exhibit to the motion to dismiss, (AFA, ECF No. 11-2).

This is a problem because this clause only provides for a <u>limited</u> waiver of immunity. The full text of the clause of the ISDEAA that Ms. Moritz cites in support of her argument that the ISDEAA Contract liability insurance constitutes a waiver of tribal immunity reads,

> Any policy of insurance obtained or provided by the Secretary pursuant to this subsection shall contain a provision that the insurance carrier shall waive any right it may have to raise as a defense the sovereign immunity of an Indian tribe from suit, <u>but that such waiver shall extend only to claims the amount and nature of which are within the coverage and limits of the policy and shall not authorize or empower such insurance carrier to waive or otherwise limit the tribe's sovereign immunity outside or beyond the coverage or limits of the policy of insurance.</u>

25 U.S.C. § 5321(c)(3)(A) (emphasis added).  Without having information about the coverage or limits of the policy of insurance, for Ms. Moritz's argument to prevail, the court would have to assume—based on no evidence supporting the assumption—that the policy at issue provides coverage for wrongful dismissal claims of the nature that Ms. Moritz brings here, and further that her claims are within the limits of the policy.  The court does not have this information before it.

"[S]uits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress."  <u>Fletcher v. United States</u>, 116 F.3d 1315, 1324 (10th Cir. 1997) (citing <u>Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma</u>, 498 U.S. 505, 509 (1991)) (cleaned up); <u>see</u> <u>id.</u> at 1327 (citing <u>United States v. Dion</u>, 476 U.S.

---

[5] The insurance carried by SVHC is referenced in the Management Services Agreement between SVHC and Team Recovery Stewards, and Ms. Moritz provided a copy of the Agreement to the state court where this action was originally filed as a support to her motion opposing SVHC's request for a temporary restraining order in relation to the Facebook page at the center of the Complaint.  (Ex. to Decl. of Ashanti Moritz in Opp. to SVHC's Mot. for TRO, ECF No. 2-33 §§ 7.1–7.6).  The Agreement does not provide enough information for the court to determine if Ms. Moritz's claim would be covered by the policy.

734, 738–39 (1986)) ("Although an express restriction of an aspect of tribal sovereignty is preferred, Congress' clear intent to restrict an aspect of sovereignty is also sufficient even if it is not express.").  This court does not foreclose the possibility that Congress may have intended to restrict tribal sovereign immunity, generally, with the language of 25 U.S.C. § 5321(c)(3)(A).  But with only speculation about the scope, limits, and impact of the ISDEAA Contract insurance on which to rely, this court cannot find either that the Band waived immunity, or that Congress' abrogation via the above-quoted language applies here.[6]

    ii.  <u>Recoupment.</u>

Additionally, Ms. Moritz argues that "SVHC voluntarily subjected itself to the jurisdiction of this Court by [filing this case].  At least in part, SVHC's claims assert claims against [Ms.] Moritz that arose specifically from her claimed actions as an employee of SVHC. Yet now they want to eviscerate any potential offset or recovery by [Ms.] Moritz for their own wrongdoing as an employer."  (Opp. Mot. Dismiss, ECF No. 15 at 5).  Ms. Moritz does not support this argument with citations to any authority that would support this proposition.  <u>Id.</u>; <u>see id.</u> at 8 (citing cases about statute of limitations issues in context of suits against United States).

The court discerns that this is an argument sounding in recoupment.  The Tenth Circuit has extended application of the recoupment doctrine, which otherwise applies to suits brought against the United States, "to Indian tribes; thus, when a tribe files suit it waives its immunity as

---

[6] The court does not reach the issue of if, had Ms. Moritz provided this information, such information would have been sufficient to establish waiver of tribal sovereign immunity.  It also notes that Ms. Moritz has not asked for limited jurisdictional discovery to resolve the issue of tribal sovereign immunity, and as a result the court does not consider that issue here.  Finally, the court observes that even if the above language were to support Ms. Moritz's argument about waiver, which it does not, the liability insurance requirement of the IDSEAA expressly does not waive sovereign liability for punitive damages, which she seeks for her allegedly wrongful dismissal.  <u>See</u> 25 U.S.C. § 5321(c)(3)(B).

to counterclaims of the defendant that sound in recoupment." Berrey v. Asarco Inc., 439 F.3d 636, 643 (10th Cir. 2006) (citing Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1344 (10th Cir. 1982)). "The scope of the waiver under the doctrine of recoupment . . . is limited only by the requirements for a recoupment claim, i.e., that the claim arise from the same transaction as the plaintiff's claim, seek the same relief as the plaintiff's claim, and seek an amount not in excess of the plaintiff's claim." Id. at 644–45.

Looking at the transactions underlying SVHC's claims and Ms. Moritz's wrongful termination claim, the court observes that they both relate to her work with SVHC. But the similarities largely end there. The Complaint focuses on the ownership and control of the Warrior Spirit Facebook page. (See Compl., ECF No. 2-4). Ms. Moritz's claim focuses on her termination by SVHC, which allegedly occurred in retaliation for her reporting of improper billing practices. (See Answer, ECF No. 5). There is little factual overlap between these claims, apart from the fact of Ms. Moritz's employment with and work for SVHC.

Looking at the relief sought by SVHC and Ms. Moritz, SVHC seeks nonmonetary relief and damages. (Compl., ECF No. 2-4 ¶ 14). The damages it seeks "are more than $50,000 but less than $300,000." Id. The nonmonetary relief it seeks is injunctive relief requiring the "Warrior Spirit Facebook Page" to be left alone by Ms. Moritz and her company, returned to the state it was in on January 22, 2022, disabled, and turned over to SVHC. Id. at ¶ A (of Prayer for Relief). Ms. Moritz seeks only damages, she does not seek injunctive relief. (Answer, ECF No. 5 ¶¶ 1–5 (of Prayer for Relief)). And the damages she seeks are significantly in excess of what SVHC seeks; for the wrongful termination claim, she seeks no less than $100,000 for her injury, and no less than $500,000 in punitive or exemplary damages. Id. ¶¶ 95–96 (of Counter- and Crosscls.).

Ms. Moritz seeks an amount in excess of SVHC's claim.  And her claims do not arise from the same transaction as those in the Complaint.  Consequently, as far as the doctrine of recoupment is concerned, the Band did not waive its immunity as to Ms. Moritz's claim.

        iii.  <u>Notice.</u>

Finally, Ms. Moritz argues that SVHC effectively waived tribal sovereign immunity because it "failed to provide any notice to [Ms. Moritz] . . . that [her] employment was or would be subject to either the tribe's sovereign immunity or to the [Federal Tort Claims Act ("FTCA")]. Rather, SVHC has either intentionally or recklessly mislead [sic] [Ms.] Moritz . . . into the belief that [she] would be protected, like any private employees in the State of Utah by state and federal law." (Opp. Mot. Dismiss, ECF No. 15 at 5).

In support of this argument, Ms. Moritz cites several sections of SVHC's Employee Policy.  <u>Id.</u> (citing Ex. 2 of Answer, ECF No. 2-26).  She also alleges that "SVHC did fail to post the required labor law and employee rights posters that advise employees of their rights."  <u>Id.</u> at 6.  But again, Ms. Moritz cites no legal authority for her argument.  And the court was unable to find authority in support of the proposition that a tribe can effectively waive sovereign immunity by failing to provide notice to its employees.  But such an "effective" waiver would appear at odds with the Tenth Circuit's observation that "suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress."  <u>Fletcher</u>, 116 F.3d at 1324 (citing <u>Citizen Band Potawatomi Indian Tribe of Oklahoma</u>, 498 U.S. at 509) (cleaned up); <u>Alabama-Quassarte Tribal Town v. United States</u>, 899 F.3d 1121, 1124 (10th Cir. 2018) (quoting <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 58 (1978)) ("A waiver of tribal sovereign immunity 'cannot be implied but must be unequivocally expressed.'").  Consequently, the court finds Ms. Moritz's argument that the Employee Policy functions as an "effective" waiver to be unavailing.

      c.   Conclusion.

Based on the above analyses and the limited information provided by the parties, the court concludes that SVHC is an "arm of the tribe" entitled to tribal sovereign immunity.  As a result, the court lacks subject matter jurisdiction over this claim as it has been brought against SVHC.  Accordingly, the court dismisses Ms. Moritz's claim, as brought against SVHC, without prejudice.  See Wilson, 399 F. Supp. 3d at 937 (dismissing case brought against tribal health consortium where consortium asserted it was entitled to tribal sovereign immunity).

## IV.   Ms. Moritz's Wrongful Termination Claim, As Brought Against Chairwoman Bear, Mr. Wash, and Mr. Garcia.

Ms. Moritz brings her wrongful termination claim against three individuals, in addition to bringing it against SVHC.  These individuals are Chairwoman Bear, Mr. Wash, and Mr. Garcia (the "Individual Defendants").  For the reasons discussed below, the court does not dismiss this claim as brought against the Individual Defendants.

      a.   The Band's Immunity Does Not Extend to the Individual Crossclaim Defendants.

Tribal sovereign "immunity extends to tribal officials, so long as they are acting within the scope of their official capacities." Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1153–54 (10th Cir. 2011) (citing Fletcher, 116 F.3d at 1324).  "The general bar against official-capacity claims, however, does not mean that tribal officials are immunized from individual-capacity suits arising out of actions they took in their official capacities." Native Am. Distrib., 546 F.3d at 1296.  "Rather, it means that tribal officials are immunized from suits brought against them because of their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." Id.

Chairwoman Bear's declaration notes that she and Mr. Wash are both members of the Band's Executive Committee, and that only the Executive Committee may manage the affairs of

Tribal owned entities such as SVHC.  (Bear Decl., ECF No. 11-1 ¶¶ 17–23).  "The Executive Committee are compensated for their time working as elected representatives including all the time that is contributed to the management of [SVHC] but are not compensated for two separate positions.  The Executive Committee is only compensated for its work as the governing body of the [Band]."  Id. ¶ 23.  The Band's rules limit management of SVHC to the Executive Committee alone, making management of SVHC within the scope of the Executive Committee members' official capacities.  Ms. Moritz's allegations concern her time working for SVHC, and her relevant interactions with Chairwoman Bear and Mr. Wash were while they were acting in their managerial roles.  But Ms. Moritz's wrongful termination claim arises out of actions they took in their official capacities, it is not a claim against them merely because of their official capacities.  The allegations as pleaded in Ms. Moritz's counter- and crossclaims highlight that she named them because of the actions they took while managing SVHC.  (See Answer, ECF No. 5 ¶¶ 52, 57–59; 61–63; 74–75 (alleging retaliation by Chairwoman Bear); id. ¶¶ 52, 57, 62–63 (alleging retaliation by Mr. Wash)).  Consequently, the court cannot find that Chairwoman Bear and Mr. Wash are entitled to the Band's sovereign immunity.

Mr. Garcia is not an Executive Committee member.  (See Bear Decl., ECF No. 11-1 ¶ 20 (listing Executive Committee members)).  When Ms. Moritz was fired from SVHC, he was employed as a Clinic Administrator of Skull Valley Health Care, LLC.  Id. ¶ 30.  He was also Ms. Moritz's supervisor.  Id.  There is no indication he is an "official" of the Band, and Ms. Moritz's allegations are directed at him as an individual.  (See Answer, ECF No. 5 ¶¶ 42, 44–45, 50–55, 57, 70, 78, 81) (describing Ms. Moritz's reports to Mr. Garcia of improper billing practices at SVHC and alleging he retaliated against for making these reports).  Accordingly, the Band's sovereign immunity does not extend to Mr. Garcia.

     b.  <u>Can Ms. Moritz Crossclaim Against the Individual Defendants, or Must She Join the United States?</u>

That the Band's immunity does not extend to the Individual Defendants is not the end of the court's analysis. This is for a couple of reasons. First, the Movants argue that Ms. Moritz has failed to state a claim against the Individual Defendants. (Mot. Dismiss, ECF No. 11 at 15). But this argument is conclusory, and Movants do not explain <u>why</u> Ms. Moritz has failed to state a wrongful termination claim. Based on Ms. Moritz's allegations that she was fired (among other reasons) in retaliation for reporting billing violations, which she says is a violation of a clear and substantial public policy, (Answer, ECF No. 5 ¶¶ 42, 44–45, 70, 85–93); <u>see</u> <u>Heslop v. Bank of Utah</u>, 839 P.2d 828, 837 (Utah 1992) (discussing public policy implicated when reporting, in-company, financial regulation violations), the requirement that the court treat all of her well-pleaded factual allegations as true on a motion to dismiss under Rule 12(b)(6), <u>see</u> <u>VDARE Found. v. City of Colorado Springs</u>, 11 F.4th 1151, 1159 (10th Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 1208 (2022), and Movants' failure to present the court with any argument as to how these allegations fail to state a claim for wrongful dismissal, the court cannot dismiss Ms. Moritz's wrongful termination claim for failure to state a claim.

Second, Movants argue that because they were carrying out an ISDEAA contract at the relevant times, any claims brought against them must be brought against the United States. Because exclusive remedy is against the United States, they argue, only the United States is a necessary party to this action, and failure to join the United States means that Ms. Moritz's claim must be dismissed under Rule 12(b)(7). Ms. Moritz counters that substitution of the United States in such circumstances is limited to the personal injury context, or at least, it is not available in the employment context as claims arising from employment are not cognizable under the FTCA. Moreover, she argues that even if her claim does implicate the FTCA dismissal

is not appropriate as the proper course of action would be to have the Attorney General certify

whether the defendants were working within the scope of their employment, and (assuming the

Attorney General finds that they were), to substitute the United States as defendant in this action

at that point.  The Movants have the better argument about Ms. Moritz's claim invoking the

FTCA, but Ms. Moritz has the better argument about the consequences of that finding.

### i.  Ms. Moritz's Claim Invokes the FTCA.

Ms. Moritz argues that because her claims are not based on personal injury and Movants

have failed to provide argument or evidence explaining why the FTCA would apply to her

wrongful termination claim, her wrongful termination claim does not invoke the FTCA.

Movants argue that the FTCA is implicated by Ms. Moritz's claim.

The Ninth Circuit's decision in Miller v. United States is instructive on the issue of

whether employment claims such as Ms. Moritz's are cognizable under the FTCA.  992 F.3d 878

(9th Cir. 2021).  The Miller plaintiff brought wrongful termination causes of action against the

United States after he was fired from his position as a law-enforcement officer with the Reno-

Sparks Indian Colony, which is a federally recognized Indian Tribe.  Id. at 882–84.  Although he

was fired by the Tribe and individuals working in tribal law enforcement and administration, he

filed suit against the United States because the Tribe had "entered into a 'self-determination

contract' with the BIA [Bureau of Indian Affairs] governing tribal law-enforcement services

("the Contract")."  Id. at 882.  The Contract included provisions concerning "Tort Claims" which

specified that "[f]or the purpose of Federal Tort Claims Act Coverage, the [Tribe] and its

employees . . . are deemed to be employees of the Federal government while performing work

under this contract."  Id.  Considering Mr. Miller's wrongful termination causes of action, the

court observed the claims, "rest exclusively on the FTCA[, and that] Miller properly invoke[d]

27

the FTCA, because the Tribe's Contract with the BIA specifies that, '[f]or the purpose of Federal

Tort Claims Act Coverage,' the Tribe and its employees 'are deemed to be employees of the

Federal government while performing work under this contract.'" Id. at 884 (quoting the

Contract).

Here, Ms. Moritz similarly brings a cause of action for wrongful termination. As Miller

observed, such claims invoke the FTCA where statutory (here) or contractual (Miller) language

specifies that for the purposes of FTCA coverage, a tribe and its employees are deemed to be

employees of the federal government while performing work under the contract.

        ii.   The Consequence of Ms. Moritz's Claim's Invoking of the FTCA.

The parties disagree about what must follow a conclusion that Ms. Moritz's claim

invokes the FTCA. Movants argue that dismissal is appropriate because the United States is the

proper party in interest for tort claims brought under the FTCA, which makes them the only

necessary party under Federal Rule of Civil Procedure 19, and the United States has not been

joined in this action. Ms. Moritz argues that because the Attorney General has not certified that

the Individual Defendants were acting within the scope of their employment there is no basis to

join the United States at this point, which means it is not a necessary party.

Ms. Moritz has the better argument. Section 5321(d) allows that a tribal organization or

tribal employees may be deemed part of the Public Health Service in the HHS for purposes of

claims brought under the FTCA. See 25 U.S.C. § 5321(d). As discussed above, this can include

employment-related claims such as Ms. Moritz's claim. But this provision further stipulates that

employees of tribal organizations carrying out an ISDEAA agreements are deemed to be

employees of the Public Health Service in the DHS "while acting within the scope of their

employment in carrying out the contract or agreement." Id. No scope of employment

determination has been made here, so the United States cannot be a necessary party, at least not yet.

In the context of the FTCA it is the Attorney General that makes a determination about whether individual defendants were acting within the scope of their employment.  Until the Attorney General's certification following such a determination (or following judicial review of such a decision), the statute does not require the United States to be substituted as defendant.  28 U.S.C. § 2679(d)(1) ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."); 25 U.S.C. § 5321(d) (including "scope of employment" requirement for employees to be deemed part of the HHS for the purpose of liability).

The FTCA establishes how employees who are sued for FTCA violations are to bring the claims brought against them to the attention of the Attorney General, to start the process of certification and substitution.  On this issue, Section 2679(c) of the FTCA states:

> The employee against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the head of his department to receive such papers and such person shall promptly furnish copies of the pleadings and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the head of his employing Federal agency.

28 U.S.C. § 2679(c).  The FTCA further specifies that,

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his

> office or employment. Upon such certification by the court, such action or
> proceeding shall be deemed to be an action or proceeding brought against the
> United States under the provisions of this title and all references thereto, and the
> United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(3).  Both of these provisions lay responsibility at the feet of the defendant-

employee to seek certification.

Reflecting the statute's language, where employees have been sued for alleged FTCA

violations, including where they committed those violations in connection with their work under

an ISDEAA contract, those employee-defendants are often the party who seeks the Attorney

General's certification that at the relevant time they were within the scope of their employment,

and following that certification, substitution of the United States in the action.  See, e.g., M.J. by

Beebe v. City of Quinhagak, No. 4:08-CV-0021, 2008 WL 11338668, at *2 (D. Alaska Aug. 19,

2008) (observing defendant law enforcement officer who was employee of tribal organization

and possibly working within the scope of his employment under an ISDEAA contract had

notified the United States of the lawsuit and requested certification under 28 U.S.C. §

2679(d)(2)); Adams v. Tunmore, No. CV-05-270, 2006 WL 2591272, at *1 (E.D. Wash. Sept. 8,

2006) (observing that party requesting certification from Attorney General that employee-

defendant, who was a volunteer at a school operated by the Confederated Tribes of the Colville

Reservation pursuant to a BIA grant, was within scope of employment at relevant times was the

employee-defendant); Big Crow v. Rattling Leaf, 2004 DSD 1, ¶ 5, 296 F. Supp. 2d 1067, 1069

(D.S.D. 2004) (observing, that where an ISDEAA "contract exists, the United States may be

liable for the negligent acts of tribal employees when the employee in question is acting within

the employee's scope of employment," reversing Attorney General's determination that law

enforcement officer employed under ISDEAA contract was not acting within scope of authority,

and substituting United States as party defendant).

**V.**     <u>**Conclusion**</u>

As the court has determined it lacks jurisdiction over Ms. Moritz's wrongful termination claim as pleaded against SVHC it must dismiss this claim, as pled against SVHC.  Fed. R. Civ. P 12(b)(1); <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); <u>Brereton v. Bountiful City Corp.</u>, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is <u>incapable</u> of reaching a disposition on the merits of the underlying claims.").

Concerning Ms. Moritz's claim against the Individual Defendants, the court reaches a different conclusion.  The court does not find that the United States is a necessary party, or that these individuals are entitled to immunity, or that Ms. Moritz has failed to state her wrongful termination claim.  Consequently, it does not dismiss Ms. Moritz's claim as pleaded against these three individuals.  However, the court notes that the Individual Defendants can follow the procedures in 28 U.S.C. § 2679(c) to begin the certification and substitution process, if they believe that they were acting within their scope of employment at the relevant times.

**VI.**     <u>**Order**</u>

For the reasons discussed above, the court **ORDERS** as follows.

The Motion to Dismiss Ms. Moritz's counter-and crossclaims is GRANTED IN PART and DENIED IN PART.

Ms. Moritz's employment discrimination claim is DISMISSED WITHOUT PREJUDICE.

Ms. Moritz's wrongful termination claim, as brought against SVHC is DISMISSED WITHOUT PREJUDICE.  The motion to dismiss is DENIED, as it concerns Ms. Moritz's wrongful termination claim as brought against Chairwoman Bear, Mr. Wash, and Mr. Garcia.

DATED this 2nd day of August, 2023.

BY THE COURT:

TENA CAMPBELL
United States District Judge