IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SKULL VALLEY HEALTH CARE, LLC, a tribal entity, and SKULL VALLEY HEALTH CLINIC LLC, a tribal entity d/b/a WARRIOR SPIRIT RECOVERY CENTER,<br><br>  Plaintiffs,<br><br>v.<br><br>NORSTAR CONSULTANTS LLC, a Utah Company, ASHANTI MORITZ, an individual, and DOES I–V,<br><br>  Defendants | **MEMORANDUM DECISION AND ORDER DISMISSING CASE WITHOUT PREJUDICE**<br><br>District Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead<br><br>Case No. 2:22-cv-00326-TC-DBP |

This matter comes before the court because of the Plaintiffs' failure to comply with court orders and move their case forward. For the reasons discussed below, the court dismisses this action without prejudice for failure to prosecute.

## PROCEDURAL BACKGROUND

On March 22, 2022, Plaintiffs Skull Valley Health Care, LLC and Skull Valley Health Clinic LLC filed this action related to the taking of the Plaintiffs' Facebook page by Defendants Norstar Consultants LLC and Ashanti Moritz. (Compl., ECF No. 2-4.) The case was removed to this court on May 13, 2025. (Notice of Removal, ECF No. 2). On May 13, 2022, Ms. Moritz filed a Third-Party Complaint for wrongful termination against Defendants Candace Bear, Victor Garcia, and Dwayne Wash. (ECF No. 32.)

On November 2, 2023, the court ordered the parties to submit a proposed scheduling order within 14 days. (ECF No. 21.) When the parties failed to comply with the court's order, the court issued an order to show cause why all claims should not be dismissed for lack of

prosecution.  (See Order dated Nov. 30, 2023, ECF No. 22.)  The parties eventually submitted their proposed schedule on December 16, 2023.  (ECF No. 25.)

On August 1, 2024, Ms. Bear moved by stipulation to stay the case pending a determination by the United States as to whether Ms. Bear was a federal employee within the meaning and contemplation of 28 USC § 2769(c).  On August 2, 2024, the court granted the stay.  (Order dated Aug. 1, 2024, ECF No. 35.)  The stay was extended twice while the United States continued its inquiry.  (See Order to Extend Stay dated Oct.  3, 2024, ECF No. 37; Order to Extend Stay dated Dec. 2, 2024, ECF No. 39.)  Eventually the United States determined that the third-party Defendants Candace Bear, Victor Garcia, Dwayne Wash were all federal employees and therefore moved to substitute itself for all three third-party Defendants.  (ECF No. 44.)  The court granted the United States' motion on April 16, 2025.  (ECF No. 45.)

The United States then filed an unopposed motion to dismiss Ms. Moritz's third-party complaint on the basis that the court lacked subject matter jurisdiction over the Third-Party Complaint against the United States because Congress has not waived sovereign immunity for wrongful termination claims.  (ECF No. 46.)  The court dismissed Ms. Moritz's Third-Party Complaint and ordered the remaining parties to file a motion for a scheduling order by June 12, 2025.  (Order dated May 29, 2025, ECF No. 51.)

But by June 13, 2025, the parties still had not filed a motion for a scheduling order.  The court ordered the remaining parties to show cause within seven days why this case should not be dismissed for failure to prosecute and comply with court orders.  (Order dated June 13, 2025, ECF No. 52.)  No explanation was filed.

## ANALYSIS

Federal Rule of Civil Procedure 41(b) allows involuntary dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with … a court order."  Fed. R. Civ. P. 41(b).  The court may dismiss actions sua sponte for failure to prosecute.  Olsen v. Mapes, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (stating that although Rule 41(b) requires a defendant to file a motion to dismiss, the rule has long been construed to let courts dismiss actions sua sponte when a plaintiff fails to prosecute or comply with orders); see also Link v. Wabash R.R. Co., 370 U.S. 626, 630 (1962) (stating that court has inherent authority to clear "calendar[] of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"); Bills v. United States, 857 F.2d 1404, 1405 (10th Cir. 1988) (recognizing dismissal for failure to prosecute as "standard" way to clear "deadwood from the courts' calendars" when there is a prolonged and unexcused delay by plaintiff).

Generally, "a district court may, without abusing its discretion, [dismiss a case without prejudice] without attention to any particular procedures."  Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe Cnty. Justice Ctr., 492 F.3d 1158, 1162 (10th Cir. 2007).  But a dismissal without prejudice is effectively a dismissal with prejudice if the statute of limitations has expired on the dismissed claims.  Gocolay v. N.M. Fed. Sav. & Loan Ass'n, 968 F.2d 1017, 1021 (10th Cir. 1992).  Here, the Plaintiffs' Complaint contains five causes of action, at least four of which the court assumes—for the purposes of this order only—would be barred by a three-year statute of limitations should the Plaintiffs refile after this dismissal.

Specifically, the Plaintiffs' first claim for conversion of the Plaintiffs' Facebook page (Compl. ¶¶ 45–91) arises either under federal law, the Copyright Act, 17 U.S.C. § 507(b), or Utah state law governing conversion, Utah Code Ann. 1953 § 78B-2-305.  The applicable law

depends on whether the Plaintiffs' Facebook page qualifies as intellectual property or personal property. See Utah Code Ann. 1953 § 78B-2-305 (requiring an action for conversion of personal property be brought "within three years"); Becton Dickinson & Co. v. Reese, 668 P.2d 1254, 1257 (Utah 1983) (applying Utah Code Ann. 1953 § 78B-2-305's three-year statute of limitations to bar claim for conversion of a patented idea); Bartholomew v. Rodale Press, Inc., No. 2:00-CV-742-TC, 2001 WL 1044914, at *3 (D. Utah Sept. 7, 2001) (applying three-year statute of limitations under the Copyright Act to claim for theft of intellectual property). In any event, under both state and federal law, the Plaintiffs' first claim would be barred by a three-year statute of limitations should the Plaintiffs refile after dismissal.

      The Plaintiffs' second cause of action for conversion of customer goodwill is a damages claim stemming from the Defendants' alleged theft of Plaintiffs' Facebook page. (Compl. ¶¶ 92–05.) Accordingly, like the first cause of action, the second cause of action also arises under either the Copyright Act or Utah Code Ann. 1953 § 78B-2-305, and would be barred by a three-year statute of limitations should the Plaintiffs refile after dismissal.

      The Plaintiffs' third claim for tortious interference with business relationships is subject to a four-year statute of limitations. See CounselNow, LLC v. Deluxe Small Bus. Sales Inc., 430 F. Supp. 3d 1247, 1262 (D. Utah 2019) ("[C]laims for tortious inference with prospective business relations are subject to a four-year statute of limitations.") (citing Utah Code Ann. § 78B-2-307(3)). This claim is not time-barred should the Plaintiffs refile after dismissal because the Plaintiffs allege that this conduct took place in March 2022. (See Compl. ¶¶ 115–16).

      The Plaintiffs' fourth cause of action for "trespass of chatt[el]" alleges that the Defendants trespassed on or injured the Plaintiffs' personal property when they altered the Plaintiffs' Facebook page. (Compl. ¶¶ 135–141.) Under Utah Code Ann. 1953 § 78B-2-305(1),

4

trespass to chattel claims are subject to a three-year statute of limitations, meaning this claim would be time-barred if the Plaintiffs refiled upon dismissal.

The Plaintiffs' fifth and final cause of action is for civil conspiracy to "dispossess" the Plaintiffs of their Facebook page. For purposes of this order only, the court finds that the underlying tort for this claim is conversion, meaning that this claim is also subject to a three-year statute of limitations under either Utah Code Ann. 1953 § 78B-2-305 or the Copyright Act.

Because the Plaintiffs' claims were filed more than three years ago, this court assumes for the purposes of this order only that the statute of limitations has expired on at least four of the Plaintiffs' five causes of action, meaning this dismissal is effectively with prejudice to certain claims. For this reason, the court applies the factors from Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992) to determine if dismissal is appropriate—namely, "(1) the degree of actual prejudice to [Defendant]"; (2) "the amount of interference with the judicial process"; (3) the litigant's culpability; (4) whether the court warned the noncomplying litigant that dismissal of the action was a likely sanction; and (5) "the efficacy of lesser sanctions." Id. at 921 (cleaned up). Dismissal with prejudice is proper only when these factors outweigh the judicial system's strong preference to decide cases on the merits. DeBardeleben v. Quinlan, 937 F.2d 502, 504 (10th Cir. 1991). The Ehrenhaus factors are not "a rigid test; rather, they represent criteria for the district court to consider [before] imposing dismissal as a sanction." Ehrenhaus, 965 F.2d at 921; see also Lee v. Max Int'l, LLC, 638 F.3d 1318, 1323 (10th Cir. 2011) ("The Ehrenhaus factors are simply a non-exclusive list of sometimes-helpful 'criteria' or guideposts the district court may wish to 'consider' in the exercise of what must always be a discretionary function."); Chavez v. City of Albuquerque, 402 F.3d 1039, 1044 (10th Cir. 2005) (describing Ehrenhaus factors as "not exhaustive, nor … equiponderant"); Archibeque v. Atchison, Topeka & Santa Fe

Ry. Co., 70 F.3d 1172, 1174 (10th Cir. 1995) ("[D]etermining the correct sanction is a fact specific inquiry that the district court is in the best position to make.").

The court now considers the factors as follows:

### A.     Degree of Actual Prejudice to the Defendants

Prejudice may be inferred from delay, uncertainty, and rising attorney's fees. Faircloth v. Hickenlooper, 758 F. App'x 659, 662 (10th Cir. 2018); Jones v. Thompson, 996 F.2d 261, 264 (10th Cir. 1993); see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n, 886 F.3d 852, 860 (10th Cir. 2018) (finding substantial prejudice when plaintiff "sparked months of litigation" and defendants "wasted eight months of litigation"); Riviera Drilling & Exploration Co. v. Gunnison Energy Corp., 412 F. App'x 89, 93 (10th Cir. 2011) (approving district court's observation that "delay would 'prolong for the defendants the substantial uncertainty faced by all parties pending litigation'" (citation omitted)).

Reviewing this case's docket, the court concludes that, while the Plaintiffs' neglect does not unduly prejudice the Defendants, the passage of time can, in general, weaken evidentiary support for a position. This factor therefore weighs in favor of dismissal.

### B.     Amount of Interference with the Judicial Process

In Jones, the Tenth Circuit concluded that the plaintiff had significantly interfered with the judicial process when he failed to answer a show-cause order or join a telephone conference. See 996 F.2d at 265. Though the plaintiff later argued that the district court could have abated the suit and revisited the status in three to six months, the court noted that abeyance would have delayed the proceedings for the other parties and the court. Id. The court said: "In similar circumstances, we have held that a district court could find interference with the judicial process when the plaintiff 'repeatedly ignore[s] court orders and thereby hinder[s] the court's

management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party.'" Id. (citation omitted).

Meanwhile, in Villecco v. Vail Resorts, Inc., the Tenth Circuit determined that the plaintiff greatly interfered "with the judicial process by failing to provide the court with a current mailing address or an address that he regularly checked; respond to discovery requests; appear at his deposition; list any fact witnesses or otherwise comply with the court's Initial Pretrial Order, or respond to the Defendants' Motion to Dismiss." 707 F. App'x 531, 533 (10th Cir. 2017); see also Banks v. Katzenmeyer, 680 F. App'x 721, 724 (10th Cir. 2017) ("[H]e did not (1) respond to the order to show cause or (2) notify the court of his change of address as required by the local rules, even though his past actions show he was aware of the requirement."); Taylor v. Safeway, Inc., 116 F. App'x 976, 977 (10th Cir. 2004) (dismissing under Ehrenhaus because "judicial process essentially ground to a halt when [Plaintiff] refused to respond to either the defendant[s' filings] or the district court's orders"); Killen v. Reed & Carnick, No. 95-4196, 1997 WL 8866, at *1 (10th Cir. Jan. 9, 1997) ("Plaintiffs' willful failure to comply with the orders of the district court 'flouted the court's authority,' and interfered with the judicial process." (citation omitted)). "[F]ailure to respond to court orders cannot be ignored." Davis v. Miller, 571 F.3d 1058, 1062 (10th Cir. 2009).

Similarly, the Plaintiffs' failure to prosecute this case—by not responding to orders requiring they file a proposed scheduling order or show cause why the case should not be dismissed—necessarily interferes with the effective administration of justice. The issue here "is respect for the judicial process and the law." See Cosby v. Meadors, 351 F.3d 1324, 1326–27 (10th Cir. 2003). The Plaintiffs' failure to comply with court orders and keep in touch with the court disrespects the court and the judicial process. Their neglect has caused the court and staff

7

to spend unnecessary time and effort. The court's frequent review of the docket and preparation of orders to move this case along have increased the court's workload and diverted its attention from other matters in which parties have met their duties and deserve prompt resolution of their issues. "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document." Lynn v. Roberts, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006).

This factor weighs toward dismissal. See Kalkhorst v. Medtronic, Inc., No. 18-cv-580-KLM, 2018 WL 6697072, at *3 (D. Colo. Dec. 19, 2018); see also Estate of Strong v. City of Northglen, No. 1:17-cv-1276-WJM-SKC, 2018 WL 6589813, at *4 (D. Colo. Dec. 14, 2018) (report & recommendation) ("It is hard to fathom how failing to respond to orders of the federal district court would not interfere with the judicial process.").

### C.   Litigants' Culpability

Proof of culpability may be drawn from a plaintiff's failure to be in touch with the court for long stretches and to respond to the court's order. See Villecco, 707 F. App'x at 534; see also Faircloth, 758 F. App'x at 662 (finding culpability when plaintiff was responsible responding to show-cause order); Stanko v. Davis, 335 F. App'x 744, 747 (10th Cir. 2009) ("For at least seven months, Stanko failed to follow this order. The district court ordered Stanko to show cause for this failure. Stanko made no effort to explain his failure regarding those seven months."); Theede v. U.S. Dep't of Labor, 172 F.3d 1262, 1265 (10th Cir. 1999) (finding plaintiff at fault for inability to receive court filings based on failure to notify court of correct address).

Earlier in this case, the parties showed an ability to respond to court orders. (See ECF Nos. 5, 15, 23, 25, 31 34, 48, 50.) And a month has now passed since the court last heard from the remaining parties despite the court's orders requiring a motion for a scheduling order by June

12, 2025 and, after no proposed schedule was filed, the court's warning that the parties must show cause by June 20, 2025, why this action should not be dismissed. (ECF Nos. 51–52.)

This factor weighs in favor of dismissal.

**D.     Whether the Court Warned Noncomplying Litigants That Dismissal was a Likely Sanction**

In <u>Faircloth</u>, the court twice warned the plaintiff that failure to comply could result in dismissal. <u>Faircloth</u>, 758 F. App'x at 662. On appeal, when the plaintiff argued he did not get these warnings, the Tenth Circuit stated: "But he could have received the warnings had he complied with the local rule requiring him to update his address. Because he did not, the court's only option was to mail documents to him at his last known address. These mailings constituted effective service [under Fed. R. Civ. P. 5(b)(2)(C)]." <u>Id.</u>; <u>see also</u> <u>O'Neil v. Burton Grp.</u>, 559 F. App'x 719, 722 (10th Cir. 2014) (affirming dismissal with prejudice for failure to appear especially after party was repeatedly warned of consequences).

Here, on June 13, 2025, the court cautioned the parties that they had seven days to show cause why this action should not be dismissed for failure to prosecute, warning that "[f]ailure to do so may result in involuntary dismissal of this action for failure to comply with court orders." (ECF No. 52.) Other orders in this case also reflected the court's admonition that failure to comply with orders would result in case dismissal. (ECF No. 22.)

There can be no mistaking the court's intentions.

**E.     Efficacy of Lesser Sanctions**

Also in <u>Faircloth</u>, the district court had decided that no lesser sanction than dismissal could be effective when "[t]he court had been unable to receive a response from Mr. Faircloth and had no way of learning where Mr. Faircloth was or when he would disclose his new

9

address." 758 F. App'x at 662. Due to this uncertainty, "the court reasonably concluded that dismissal was necessary." Id.

And in Villecco, dismissal was approved when, "given Villecco's failure to communicate, to respond to any notices or the Motion to Dismiss, or to comply with any deadlines, the [district] court found no lesser sanction than dismissal would be effective." 707 F. App'x at 533. The Tenth Circuit said that "[a] lesser sanction would be ineffective because a stay would not have a 'real impact on [Plaintiff] in encouraging responsiveness.'" Id. at 535; see also O'Neil v. Burton Grp., 559 F. App'x 719, 722 (10th Cir. 2014) ("[S]imply because lesser sanctions were available does not mean that the court was obligated to apply them.").

In yet another case, the Tenth Circuit stated that though "dismissal should be imposed only after careful exercise of judicial discretion," it

> is an appropriate disposition against a party who disregards court orders and fails to proceed as required by court rules …. Dismissal of the [case] is a strong sanction to be sure, but it is no trifling matter for [a party] to abuse our office by disappearing and failing to meet our deadlines. The federal courts are not a playground for the petulant or absent-minded; our rules and orders exist, in part, to ensure that the administration of justice occurs in a manner that most efficiently utilizes limited judicial resources.

United States ex rel. Jimenez v. Health Net, Inc., 400 F.3d 853, 855, 856 (10th Cir. 2005).

Although dismissal is a drastic sanction, the Tenth Circuit has "repeatedly upheld dismissals in situations where the parties themselves neglected their cases or refused to obey court orders." Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). Dismissal is warranted when there is a persistent failure to prosecute the complaint. See Meade v. Grubbs, 841 F.2d 1512, 1518 n.6, 1521–22 (10th Cir. 1988).

Applying these principles, the court concludes that no sanction less than dismissal would work here. The Plaintiffs have neglected this case—which has shown no meaningful signs of progression in the last three years—so thoroughly that the court doubts monetary or evidentiary

sanctions would be effective. "[I]t is apparent that [the] Plaintiff[s] [are] no longer interested in and/or capable of prosecuting [their] claims. Under these circumstances, no lesser sanction is warranted and dismissal is the appropriate result." Kalkhorst, 2018 WL 6697072, at *4.

## CONCLUSION

Having comprehensively analyzed the Ehrenhaus factors against the timeline and the Plaintiffs' lack of responsiveness, the court concludes that dismissal is appropriate.

DATED this 26th day of June, 2025.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge